Pritchard v. Trust Co.

HAZEL H. PRITCHARD v. FIRST-CITIZENS BANK AND TRUST COMPANY, A
BANKING CORPORATION, JOHN G. PRITCHARD, T. W. PRITCHARD, JR., AND
SARA P. HERNDON, EXECUTORS UNDER THE LAST WILL AND TESTAMENT OF T.
W. PRITCHARD, AND JOHN G. PRITCHARD, INDIVIDUALLY AS LEGATEE UNDER
THE WILL OF T. W. PRITCHARD

No. 7726SC685

(Filed 7 November 1978)

Executors and Administrators § 23— widow's year's support—computation of "net
income"

"Net income" as used in G.S. 30-31 providing for a widow's year's
allowance is to be computed after deducting all federal and state income taxes
attributable to the income received by the decedent during the three years
preceding his death, since the Legislature by this statute intended the widow
to receive an allotment not exceeding one-half of the income which would pro-
bably have been actually received by and available to her deceased husband
for the support of his family had he lived an additional year.

APPEAL by individual defendant, John G. Pritchard, from
*Griffin, Judge.* Order entered 21 April 1977 in Superior Court,
MECKLENBURG County. Heard in the Court of Appeals 24 May
1978.

This is a proceeding under G.S. Ch. 30, Art. 4, for allotment
of a year's allowance for Hazel H. Pritchard, the surviving spouse
of T. W. Pritchard, who died testate on 15 June 1975. By his will
and codicil thereto the decedent bequeathed his automobile and
all personal property in his home to his wife, Hazel H. Pritchard,
he bequeathed the sum of $2,000.00 to a friend, and he devised
and bequeathed the remainder of his estate to the trustees of an
inter vivos trust which he had created in 1968. The trust instru-
ment, as amended in 1973, provides that after the grantor's death
the trustees shall pay from income the sum of $18,000.00 per year
to or for the benefit of the grantor's wife and directs the trustees
to use such additional amounts of income or principal as they
shall determine adequate to provide for her comfortable support.
Upon the death of grantor's wife, the remaining properties in the
trust are to be divided among three of the grantor's children, all
of whom are adults. The trustees of the trust are First Citizens
Bank & Trust Company and the three children. The same parties
are also the executors under testator's will and codicil.

On 31 December 1975, Hazel H. Pritchard filed her petition with the Clerk of Superior Court for allotment of the year's allowance provided for under G.S. Ch. 30, Art. 4. She alleged that the estate of her deceased husband is not insolvent, that the personal estate of which he died possessed exceeds $1,000,000.00, and that the average annual net income of the deceased for the three years next preceding his death was $40,000.00. An order dated 12 July 1976 was entered by the Assistant Clerk of Superior Court finding that the material allegations of the petition are true and adjudging that the petitioner is entitled to a year's allowance for her support for one year after the death of her husband. The order commanded the Sheriff to summon a Magistrate and two persons qualified to act as jurors to assign to the petitioner her year's allowance. The Magistrate and the two Commissioners thus summoned filed their report on 22 July 1976 assigning the sum of $40,640.00 as the widow's year's allowance. As result of an objection filed by the executors, the matter was referred back to the Commissioners, who, after a further hearing, filed their report with the Clerk on 17 February 1977 again assigning the sum of $40,640.00 to the widow "as a sufficiency of decedent's estate for her support for one year from decedent's death, according to the estate and condition of the decedent."

The executors excepted to the report of the Commissioners on the ground that the sum assigned exceeds one-half of the decedent's average annual net income for the three years prior to his death. In this connection the executors pointed out that it appears that the sum allotted by the Commissioners was arrived at by using the figure shown as "adjusted gross income" on the Federal Income Tax returns for the decedent for the three years prior to his death. The three year average of this figure was $81,289.00, one-half of which is $40,644.50, which is approximately the amount which the Commissioners awarded. The executors contended that the "net income" referred to in G.S. 30-31 should be computed by deducting the amount of Federal and State income taxes. The three year average net income of the decedent remaining after deducting income taxes was $57,260.00, one-half of which is $28,630.00, and the executors contended that the year's allowance should be a sum not greater than that amount.

The executors also contended that they had advanced to the petitioner $61,236.14 in cash and had distributed to her household

goods and an automobile in the aggregate value of $15,100.00, making total distributions to her of $76,336.14, and they asked that these advances be allowed as a credit against the year's allowance.

The Clerk of Superior Court approved the report of the Commissioners and ordered the executors to pay petitioner the sum of $40,640.00 for her year's allowance. Upon appeal by the executors, the Judge of Superior Court confirmed the order of the Clerk. From this order, John G. Pritchard, one of the ultimate beneficiaries of the trust, appealed.

*Francis O. Clarkson, Jr., and William B. Webb, Jr., for petitioner appellee.*

*F. T. Miller, Jr., and James W. Allison for defendant appellant.*

PARKER, Judge.

G.S. 30-31 provides that the total value of all allowances for year's support allotted under the procedure provided for in Part 3 of Article 4 of G.S. Chapter 30 "shall not in any case exceed the one half of the average annual net income of the deceased for three years next preceding his death." The question presented by this appeal is whether the words "net income" in this context mean income remaining after deducting Federal and State income taxes. We hold that they do, and accordingly we reverse the order appealed from.

Absent any statutory definition of the words "net income" as those words are used in G.S. 30-31, we look to the history and purpose of the statute to ascertain their meaning. The purpose of the larger allowance authorized by Part 3 of Article 4 of G.S. Chapter 30 appears to be to provide the surviving spouse of a solvent decedent with a level of support commensurate with the support which he or she would have had from the deceased spouse during the first year after the spouse's death had the death not occurred. The statute, G.S. 30-31, is designed to permit the allowance to the surviving spouse of a solvent decedent of an amount sufficient to maintain for a period that standard of living to which he or she had been accustomed, thereby avoiding the hardship which an immediate and drastic reduction in income would entail. This interpretation of the purpose of the statute is borne out by its history.

The first statute authorizing a widow's year's allowance enacted in North Carolina provided for a much more limited sort of support. The statute was enacted in 1796 because,. so the statute recited, "under the present existing laws, it is in the power of the administrator to expose to sale the whole crop and provisions of the deceased, and thereby deprive the widow of the means of subsistence for herself and family" 1796 N.C. Session Laws, ch. 469. Before the granting of letters of administration, the widow was permitted to "use so much of the crop, stock and provisions then on hand, as may be absolutely necessary for the support of herself and her family." When letters of administration were granted, the widow could petition the court to appoint one justice of the peace and three freeholders to allot "such part of the crop, stock and provisions as they may conceive necessary and adequate for the support of the widow and family, for the space of one year." The measure of the allotment was the necessities of the widow and her children. This was emphasized by Chief Justice Ruffin in his explanation of the purpose of the widow's year's allowance:

> [T]he purpose was to make provision for the pressing wants of the widow, personally, and to enable her at that mournful juncture, to keep her family about her for a short season, and prevent the necessity of scattering her children abroad, until time were allowed for selecting suitable situations for them. That was the sole object of the law, and not to give to the widow an additional interest in the personal estate of the husband, in the nature of a distributive share, transmissible to her executor.

*Kimball v. Deming*, 27 N.C. 418, 419 (1845).

The present two-tiered system was instituted by the Legislative Session of 1868-69 when the widow was given the right to a minimum year's allowance of $300, Session Laws of 1868-69, ch. 93, s. 10, with the alternative right, upon a showing by application to the Superior Court that the estate of the decedent was not insolvent and was worth more than $2000, *Id.*, s. 22, to the allotment of an allowance, "sufficient for the support of herself and her family according to the estate and condition of her husband," which allowance was not to exceed "the one half of the annual net income of the deceased for the three years next preceding his death." *Id.*, s. 24. The larger allowance was no longer limited to the provision of the family's bare necessities,

but was set at a level which would allow the widow to receive during the first year of her widowhood that level of support which she had been accustomed to receiving from her husband. The formula prescribed for computing the maximum larger allowance has remained unaltered except that the word "average" was added to the statute, G.S. 30-31, before the words "annual net income" when the General Statutes were recodified in 1943, thereby making the statute conform to the interpretation already given it by our Supreme Court in *Holland v. Henson,* 189 N.C. 742, 128 S.E. 145 (1925).

In our opinion, the Legislature by this statute intended the widow to receive an allotment not exceeding one-half of the income which would probably have been actually received by and available to her deceased husband for the support of his family, had he lived an additional year. Accordingly, we hold that net income in G.S. 30-31 means "take home pay" or "after-tax income," because this is the only income that is "netted," that is truly available for family support purposes in a real sense, as any employee whose earnings are subject to withholding can testify. We hold, therefore, that "net income" in G.S. 30-31 is not "adjusted gross income," as the petitioner appellee submits and as the trial court apparently held, but rather is to be computed after deducting all federal and state income taxes attributable to the income received by the decedent during the three years preceding his death.

It must be emphasized that the formula in G.S. 30-31 serves only to calculate the *maximum* allowance which may be assigned and does not represent an amount which must be assigned. The only requirement laid down by G.S. 30-31 is that the allowance be, within the maximum limit specified, "a value sufficient for the support of plaintiff according to the estate and condition of the decedent." In some cases, this amount could be considerably less than the statutorily prescribed maximum.

Appellant also contends that the trial court erred in not directing that the amounts already advanced by the executors to the petitioner be credited against her year's allowance. This matter cannot be resolved on the present record. The record on appeal contains no indication as to whether or not the petitioner has dissented from her husband's will. However, the briefs of both

parties indicate that she has filed a dissent. Whether under G.S. 30-1 she has a right to dissent is a question which, so far as we have been informed, may not yet be determined. If she has effectively dissented, she is entitled to receive her year's support in addition to the amounts she will otherwise be entitled to receive from her husband's estate. *Bank v. Melvin*, 259 N.C. 255, 130 S.E. 2d 387 (1963). If she has not effectively dissented, the year's allowance shall "be charged against the share of the surviving spouse" under the will. G.S. 30-15. In any event, the executors will be entitled to credit on their accounting for the value of the property and cash distributed by them to the widow, and at this juncture it cannot be determined whether that credit should properly be applied against the amount she is entitled to receive as her year's support or against the amount she will otherwise be entitled to receive from her husband's estate.

The order appealed from is reversed and this matter is remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.

Judges HEDRICK and MITCHELL concur.